**HOLSUM BAKING CO. v. GREEN, Director of Department of Agriculture of Ohio, et al.**

**No. 1106.**

District Court, N. D. Ohio, W. D.
Oct. 14, 1930.

Mulholland & Hartmann and Garrison & Phillips, all of Toledo, Ohio, for plaintiff.

Harry G. Levey, Asst. Atty. Gen., for defendants.

Before DENISON, Circuit Judge, and HAHN and KILLITS, District Judges.

KILLITS, District Judge.

The plaintiff in this action is a corporation engaged in the baking and marketing of bread, having its place of business in a city of the state of Indiana adjacent to the line between that state and the state of Ohio, and having also a large market for its product within the last-named state. The defendants are the officers of the state of Ohio, charged by law with the duty to enforce an act of the General Assembly of Ohio known as an act for the regulation of bakeries, passed in 1921, the pertinent provisions of which, attacked in this action, are carried into the General Code of Ohio as sections 1090—37, 1090—38, the texts of which respectively appear in the margin.[1]

While, indeed, the whole act is attacked for unconstitutionality, we are invited to consider but the sections referred to, and, respecting them, the objection is only against the limitation of tolerance above the specified weight, determined twelve hours after baking; i. e., one ounce to the pound in case of single loaves and an average of but one-half ounce to the pound in blocks of at least twelve loaves. For brevity, these statutory limitations we designate as maximum surplus tolerances.

On the coming in of the complaint, and upon requisite showing, a temporary injunction (temporary restraining order, in fact) was allowed, and the cause set down for an early hearing as on a motion for a temporary injunction, to be considered by this court, three judges sitting as required by section 266 of the Judicial Code (28 USCA § 380). At the hearing it was stipulated by all the parties that the cause should be submitted as at a final hearing; all questions of practice and all technical formalities being waived. No evidence was offered; it being stipulated also that the averments of fact in the complaint which were properly pleaded were true. Many of these allegations relate to the functions of the defendant administrative officers; deal with the business in the state of Ohio done by the plaintiff, the general interests in the subject on the part of bakers of the state and consumers and the public generally, the peril plaintiff and its agents are in because of threats of enforcement of the statutes in question, and other allegations of analogous nature which delineate a situation out of which an issue arises qualified for submission to this court. These allegations need not be more particularly set forth.

The act, as to the sections exemplified in the margin, is attacked as unconstitutional, in the view that, respecting maximum surplus tolerances, it is unreasonable, arbitrary, oppressive to the bakers, and without merit respecting the rights of the general public—in short, an invasion of rights guaranteed under the Fourteenth Amendment to the Federal Constitution. As a practical matter, it is urged, without contradiction, that these limitations prevent the baker from giving to consumers the benefit of the present reduced cost of flour.

Practically the question is here which was raised and decided by the Supreme Court of the United States in Burns Baking Company v. Bryan, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 36 A. L. R. 661. It is valuable here to quote the following allegations of fact from the complaint, which, under the stipulations, are admitted to be true, and which, along with those allegations noticed more generally, supra, bring the fact situation of this case in close parallel to that in Burns Baking Co. v. Bryan, supra, namely:

"9. That there are periods when evaporation, under ordinary conditions of temperature and humidity prevailing in Ohio, exceeds the prescribed maximum tolerances and makes it impossible to comply with the provisions of said Act without employing artificial and expensive means to prevent or retard evaporation, and that these periods are of great frequency and duration.

"That the best machinery available for use in the preparation of bread, and for use in the baking of bread, and for use in the cooling of bread after baking, cannot at all times prevent variation in excess of the maximum

[1] "Sec. 1090-37. Bread shall not be sold or offered or exposed for sale otherwise than by weight and shall be manufactured for sale and sold only in units of sixteen or twenty-four ounces, or multiples of one pound. When multiple loaves are baked each unit of the loaf shall conform to the weight required by this section. The weights herein specified shall be construed to mean net weights twelve hours after baking and to be determined by the average weight of at least twenty-five loaves. Such unit weights shall not apply to rolls and such bread as shall be defined as fancy bread by the Secretary of Agriculture. * * *

"Sec. 1090-38. The secretary of agriculture shall prescribe such rules and regulations as may be necessary to enforce the preceding section, including reasonable tolerances or variations within which all weights shall be kept, provided, however, that such tolerances or variations shall not exceed one ounce per pound over or under the standard unit for single loaves, provided, however, that tolerance permitted in the weighing of twenty-five or more loaves shall not exceed one-half ounce per pound. The said secretary, and under his direction, the local sealers of weights and measures, shall cause the provisions of this section to be enforced. Before any prosecution is begun under this section the parties against whom complaint is made shall be notified and be given an opportunity to be heard by said secretary."

tolerance provided for in Section 1090–38 of said Act; that the variations in the weight of bread are due to natural causes, to-wit, unavoidable fluctuation in the amount of gas contained in the bread; unavoidable variation in the consistency of the dough used in the preparation of the bread; unavoidable divergent conditions of exposure during the preparation of baking; unavoidable variation of temperature of the oven during baking; that baking of bread on a large scale is not economically possible without the use of such machinery; that variations due to the foregoing causes are even greater where processes ordinarily done by machinery are done by hand; that the variations in the weight of loaves of bread due to the foregoing climatic and manufacturing conditions cause the weight of a large proportion of the loaves of bread to vary in excess of the prescribed maximum tolerances and make it impracticable to comply with the provisions of Sections 1090—37 and 1090—38 without great loss on the part of the manufacturer."

With this record before us it seems inevitable to hold that the decision in Burns Baking Co. v. Bryan, supra, should be controllingly applied to the issue here. It is true that there are some differences in detail between the Nebraska and Ohio acts. In the former, the weight is to be ascertained within twenty-four hours after baking, with a maximum surplus tolerance of two ounces to the pound, while, in Ohio, the time limit of weighing is twelve hours, with a tolerance of one ounce above the pound in single loaves or an average of one-half ounce in lots of twenty-five pound loaves. It is neither claimed, nor is it apparent, that these distinctions affect the applicability of the Burns decision to the issue before us.

Manifestly, considered as a proper exercise of the state's police powers, there is a distinction between a provision for a surplus tolerance and one for a deficiency. The latter is manifestly in the public interest as a safeguard against imposition, and, moreover, observance of it entails no substantial embarrassment to the baker, whereas the former, as observed in the Burns decision, serves the consuming public in no substantial manner, and it is readily seen to be a definitely hampering restriction in baking operations. Moreover, if the bakers are right, as claimed in this case, that, because of the relation of operation and overhead expense to the cost of materials, it prevents passing to the consumer the latter's fair share of the lessened cost of materials, its presence in the act is definitely against the public interest.

An order, therefore, will enter enjoining the defendants and their agents from enforcing, or attempting to enforce, against plaintiff, its agents and customers, those provisions of sections 1090—37 and 1090—38 of the General Code of Ohio, and any regulations formulated by defendants pursuant to said act, which provide for maximum surplus tolerances to loaves of bread sold in the markets of the state, and from enforcing, or attempting to enforce, the penalties provided in section 1090—43 of said act for infractions of said provisions respecting such tolerances.

The District Judge will enter a final decree accordingly.